

ENTERED
05/07/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>S CHASE LIMITED PARTNERSHIP., *et al*,<br><br>Debtors.¹ | Case No. 18-31017-H1-11<br>(Jointly Administered)<br>(Chapter 11) |

**SECOND AGREED STIPULATION AND INTERIM ORDER AUTHORIZING
USE OF CASH COLLATERAL AND SETTING FURTHER HEARING ON
DEBTORS' USE OF CASH COLLATERAL**
[**This instrument relates to Docket Nos. 5 & 23**]

S Chase Limited Partnership ("SCLP"), Crosswinds Houston Limited Partnership ("CHLP"), and W Point Limited Partnership ("WPLP) (collectively the "Debtors"), Debtors in the above-captioned Chapter 11 cases have moved this Court on an emergency basis for a preliminary order authorizing use of cash collateral (the "Motion"). The Court set a hearing on this Motion for March 8, 2018, at which counsel for the parties appeared and presented evidence and oral argument. On March 12, 2018, this Court entered its *Preliminary Agreed Stipulation and Order Authorizing Use of Cash Collateral and Setting Final Hearing on Debtors' Use of Cash Collateral* [Docket No. 23] (the "First Interim Cash Collateral Order") which set a further hearing on the Motion for March 22, 2018. RSS CGCMT2014GC23-TX SCLP, LLC and RSS WFRBS2014C24-TX CHLP, LLC (collectively "Secured Lenders") and Debtors have reached an agreement regarding Debtors' continued interim use of cash collateral and stipulate the following:

1. On March 5, 2018 (the "Petition Date"), the Debtors filed petitions for reorganization under chapter 11 of the Bankruptcy Code. The Debtors continue in possession and management of their businesses pursuant to 11 U.S.C. §§ 1107 and 1108. To date, no trustee or creditors' committee has been appointed in these Bankruptcy Cases;

2. On March 23, 2018, this Court entered an Order requiring the Debtors' Bankruptcy Cases to be jointly administered under Case No. 18-31017 [Docket No. 24];

3. The Debtors own and operate the respective real properties described in the Motion (the "Real Properties") and these Bankruptcy Cases are "single asset real estate" (as defined under Section 101(51B) of the Bankruptcy Code), the Debtors are "single asset real estate" entities, and the Debtors are subject to the requirements set forth in Section 362(d)(3) of the Bankruptcy Code;

---

¹ The Debtors in these chapter 11 cases (the "Bankruptcy Cases") along with the last four digits of each Debtor's federal tax identification number, include: S Chase Limited Partnership (2513); Crosswinds Houston Limited Partnership (2014); and W Point Limited Partnership (2546). The location of the Debtors' service address is: 1032 Royal Marquis Circle, Ocoee, FL 34761.

4. Prior to, on, and after the Petition Date, the Debtor has received and collected, and continues to receive and collect, issues, proceeds, profits, and accounts receivable (collectively, the "Revenues") generated by and arising from the operation of the Real Properties;

5. Secured Lenders are secured creditors with pre-petition security interests in the Debtors' Real Properties, related personal property, inventory, and proceeds therefrom, as well as the Revenues generated from the operation and leasing of the Real Properties (collectively, the "Property"). Pursuant to 11 U.S.C.§ 552(b), the Secured Lenders hold security interests in post-petition Revenues and Property and related proceeds and profits therefrom collected by the Debtors, which is cash collateral, whether now in the Debtors' (or persons in privity with the Debtor) possession, custody, or control, or in which the Debtors will obtain an interest during the pendency of these Bankruptcy Cases, and all other "cash collateral" within the meaning of 11 U.S.C. § 363(a) (the "Cash Collateral"), and has stipulated to the limited use of the Cash Collateral as provided in this Order;

6. Within seven (7) days after the entry of this Order: (a) each of SCLP and WPLP shall provide RSS CGCMT2014GC23-TX SCLP, LLC with a status update on insurance claims and payments related to any fires and Hurricane Harvey damage at such Debtor's property; and, (b) CHLP shall provide RSS WFRBS2014C24-TX CHLP, LLC with a status update on insurance claims and payments related to any fires and Hurricane Harvey damage at such Debtor's property;

7. Within three (3) business days prior to any further hearing on use of cash collateral, a budget v. actual report reflecting actual expenditures made under the Budget (as defined hereinafter) shall be provided by: (a) SCLP and WPLP to RSS CGCMT2014GC23-TX SCLP, LLC; and, (b) CHLP to RSS WFRBS2014C24-TX CHLP, LLC;

8. Within seven (7) days after the entry of this Order, a current rent roll shall be provided by: (a) SCLP and WPLP to RSS CGCMT2014GC23-TX SCLP, LLC; and, (b) CHLP to RSS WFRBS2014C24-TX CHLP, LLC;

9. Within seven (7) days after the entry of this Order, a status update on leasing activity for the Debtors' respective properties, including copies of each post-petition lease, shall be provided by: (a) SCLP and WPLP to RSS CGCMT2014GC23-TX SCLP, LLC; and, (b) CHLP to RSS WFRBS2014C24-TX CHLP, LLC;

10. Within seven (7) days after the entry of this Order, a copy of any proposal for post-petition financing that has been received and a status report of units for each property to be rehabilitated and/or made ready with funds provided in the Budget shall be provided by: (a) SCLP and WPLP to RSS CGCMT2014GC23-TX SCLP, LLC; and, (b) CHLP to RSS WFRBS2014C24-TX CHLP, LLC;

11. Within seven (7) days after the entry of this Order, copies of any crime/incident reports which any Debtor has readily available shall be provided by: (a) SCLP and WPLP to RSS CGCMT2014GC23-TX SCLP, LLC; and, (b) CHLP to RSS WFRBS2014C24-TX CHLP, LLC;

12. The Debtors shall segregate and account to the Secured Lenders for all Cash Collateral that the Debtors collected, possessed, or used since the Petition Date, that they have permitted to be transferred, if any, into the possession of others, that is being held by those in privity with the Debtors, or which the Debtors might hereafter obtain. Notwithstanding anything in this Order and/or the Budget attached hereto, the Debtors shall not make any payments to or for the benefit of any insider of the Debtors, as that term is defined in Section 101(31) of the Bankruptcy Code.

13. Upon **three (3) business days'** notice to Debtors' counsel by e-mail, the Debtors shall, during regular business hours, allow the Secured Lenders and/or their attorneys or agents to review and copy: (a) all available invoices, contracts, leases, and other documents and writings relating to any and all disbursements made or obligations incurred by the Debtors with respect to the operations of the Debtors; and, (b) any and all available other books and records of the Debtors pertaining to their use of Cash Collateral. Debtors reserve the right to seek relief from the Bankruptcy Court if a request made under this provision is deemed by the Debtors to be unreasonable.

14. Upon **three (3) business days'** notice to Debtors' counsel by e-mail, the Debtors shall, during regular business hours, permit representatives, agents, and/or employees of the Secured Lenders to visit, inspect, have reasonable access to and consult with, as the case may be: (a) the Debtors' books and records; (b) the personnel and/or agents of the Debtors who are familiar with the Debtors' books and records, or the information set forth therein; (c) the Debtors' business, for the purposes of, without limitation, conducting inventory counts, reviews of licenses and payments to taxing or other governmental authorities, appraisals of Real Property, and environmental site assessments of the Real Property; and, (d) such other information as the Secured Lenders may reasonably request. The Debtors and their representatives, agents, and/or employees shall cooperate and consult with, and provide to such representatives, agents, and/or employees of the Secured Lenders all such information as they may reasonably request during regular business hours. Debtors reserve the right to seek relief from the Bankruptcy Court if a request made under this provision is deemed by the Debtors to be unreasonable.

15. Upon **three (3) business days'** notice to Debtors' counsel by e-mail, the Debtors shall provide to the Secured Lenders such additional financial or other information concerning the acts, conduct, property, including the Collateral, assets, liabilities, operations, financial condition, transactions of Debtors, or concerning any matter which may affect the administration of the estates, as the Secured Lenders may from time to time reasonably request. Debtors reserve the right to seek relief from the Bankruptcy Court if a request made under this provision is deemed by the Debtors to be unreasonable.

16. Upon written request of the Debtor(s), Secured Lenders are authorized to remit funds to satisfy payment of the Debtor(s) insurance premiums scheduled to renew in May 2018.

After careful consideration of the stipulations in Paragraph 1-16 above, the relief requested in the Motion is **GRANTED** on an interim basis as set forth below. Therefore, it is

**ORDERED** that the Stipulations in Paragraphs one (1) – sixteen (16) are approved, and the Debtors are directed to comply with their respective obligations under the Stipulations and may only use Cash Collateral pursuant to this Order and the Budget; it is further

**ORDERED** that Debtors be and are hereby authorized to use cash collateral to pay only the expenses shown on the budget attached hereto as **Exhibit A** (the "Budget"), with up to a five percent (5%) total variance on budgeted amounts, from the date this order is signed through the date of the next scheduled hearing on the Motion; it is further

**ORDERED** that RSS CGCMT2014GC23-TX SCLP, LLC is granted replacement liens on all of the Revenues, including, without limitation, all rents, accounts receivable and insurance proceeds of SCLP and WPLP acquired after the bankruptcy filing to the same extent, validity, and priority as existed on the date the Chapter 11 cases were filed, and to the extent of cash collateral that is actually used; it is further

**ORDERED** that RSS WFRBS2014C24-TX CHLP, LLC is granted replacement liens on all of the Revenues, including, without limitation, all rents, accounts receivable and insurance proceeds of CHLP acquired after the bankruptcy filing to the same extent, validity, and priority as existed on the date the Chapter 11 cases were filed, and to the extent of cash collateral that is actually used; it is further

**ORDERED** that RSS CGCMT2014GC23-TX SCLP, LLC is hereby granted replacement liens and security interests, to the extent they existed as of the Petition Date, on all assets of SCLP and WPLP and their estates, whether now existing or hereafter acquired, and the proceeds, income and profits and offspring of any of the foregoing, to secure such Debtors' use of cash Collateral, whether pursuant to this Order or otherwise, and to secure any diminution in value of the Collateral ("RSS SCLP Replacement Liens") ; it is further

**ORDERED** that RSS WFRBS2014C24-TX CHLP, LLC is hereby granted replacement liens and security interests, to the extent they existed as of the Petition Date, on all assets of CHLP and its estate, whether now existing or hereafter acquired, and the proceeds, income and profits and offspring of any of the foregoing, to secure such Debtor's use of cash Collateral, whether pursuant to this Order or otherwise, and to secure any diminution in value of the Collateral ("RSS CHLP Replacement Liens"; together with the RSS SCLP Replacement Liens, hereafter the "Replacement Liens"); it is further

**ORDERED** that such Replacement Liens and security interests: (i) are subordinate only to any prior existing and validly perfected liens and security interest in such assets, and (ii) shall attach in the same order of priority that existed as to the Collateral under applicable non-

bankruptcy law as of the Petition Date, and to the extent of cash collateral that is actually used. This stipulation shall not be binding on any other parties and without prejudice to the parties seeking additional relief in a final order; it is further

**ORDERED** that the Replacement Liens will not attach to any avoidance actions under Chapter 5 of the Bankruptcy Code; it is further

**ORDERED** that, to the extent that the Secured Lenders advance funds currently held by the Secured Lenders to fund repairs to the Real Property, pursuant to this Court's Order Authorizing and Requiring Emergency Actions [Docket No. 50] (the "Emergency Order") or the Order Granting Debtors' Application to Employ Property Management Company in the Ordinary Course of Business; and Employ Construction Manager as an Estate Professional [Docket No.  ] or otherwise, or funds necessary to ensure the preservation and/or maintenance of the Real Property, as determined by Kaplan Management, Inc. ("Kaplan"), including for the procurement of insurance or the satisfaction of ad valorem taxes, Secured Lenders shall have an allowed administrative expense claim as set forth under Section 364(c)(1) of the Bankruptcy Code, , to the extent the advanced funds are either: (i) deemed cash collateral; or (ii) owned by the Secured Lenders, with priority in payment over any and all administrative expenses arising under Bankruptcy Code Sections 507(b) and 503(b), to the extent of such advances, provided however, that such administrative expense claim shall be subordinate only to administrative claims allowed pursuant to 11 U.S.C. § 330 and quarterly fees owing to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6). To the extent that 11 U.S.C. § 362, or any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized or created in this Order, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, other applicable federal law, and the judicial power of the U.S. Bankruptcy Court.  The parties reserve all rights with respect to whether the funds held by the Secured Lenders constitute cash collateral or are instead owned by the Secured Lenders; it is further

**ORDERED that Debtors are authorized to use funds to satisfy immediate life, health, and safety concerns as determined by Kaplan, subject to the terms of Construction Management Agreement between the Debtors and Kaplan Management Company, Inc, as orally approved by the Court on May 4, 2018,  and in the Order Authorizing and Requiring Emergency Actions [Docket No. 50] (the "Emergency Order") or the Order Granting Debtors' Application to Employ Property Management Company in the Ordinary Course of Business; and Employ Construction Manager as an Estate Professional [Docket No.  ].**

**ORDERED** that, unless otherwise agreed to in writing by the Debtors and the Secured Lenders, the Debtors' rights to use Cash Collateral shall expire on the earlier of (each a "Termination Event"): (a) 11:59 P.M. (Central Time) on May 14, 2018, unless extended or modified by further order of this Court; (b) 11:59 P.M. on the date that is fourteen (14) days after the Bankruptcy Court enters an order determining that immediate life, health, and safety concerns with respect to the Real Properties, as expressed by this Court in its *Order for Examiner* [Docker No. 18] (the "Examiner Order"), have been resolved, if the Debtors fail

to file a motion seeking approval to engage a real estate broker to market and sell the Real Properties by that date; (c) 11:59 P.M. on the date that is fourteen (14) days after the Bankruptcy Court enters an order determining that immediate life, health, and safety concerns with respect to the Real Properties, as expressed by the Court in its Examiner Order, have been resolved, if the Debtors fail to file a motion seeking approval of bid procedures and the sale of the Real Properties by that date; (d) 11:59 P.M. on the date that is twenty (21) days after the Bankruptcy Court enters an order determining that immediate life, health, and safety concerns with respect to the Real Properties, as expressed by the Court in its Examiner Order, have been resolved, if the Debtors have failed to commence establishing a data room containing information sufficient for interested parties to perform necessary financial due diligence in connection with the sale of the Real Properties by that date; (e) 11:59 P.M. on the date that is ninety (90) days after the Bankruptcy Court enters an order determining that immediate life, health, and safety concerns with respect to the Real Properties, as expressed by the Court in its Examiner Order, have been resolved, if this Court has not entered an Order approving the sale of the Real Properties by that date; (f) the appointment of a Chapter 11 trustee; (g) conversion of these Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code; or, (h) the lifting of the automatic stay to allow Secured Lenders to foreclose on any of Secured Lenders' Collateral; it is further

**ORDERED** that any termination of Debtors' authority to use the Revenues hereunder shall be without prejudice to Debtors' right to file an additional motion for authority to use of Cash Collateral; it is further

**ORDERED** that nothing contained in this Order shall be deemed to be a consent by Secured Lenders to any charge, lien, assessment or claim against under 11 U.S.C. § 506(c) of the Bankruptcy Code or otherwise, and shall be without prejudice to any and all of Secured Lenders' rights under the Loan Documents, the Bankruptcy Code, and other applicable law; it is further

**ORDERED** that the Debtors may use Cash Collateral to pay the U.S. Trustee's quarterly fees as they become due; it is further

**ORDERED** that no act committed or action taken by Secured Lenders pursuant to the terms of this Order, the Emergency Order, or any order granting the Debtors' Application to Employ Property Management Company in the Ordinary Course of Business; and, Employ Construction Manager as an Estate Professional [Docket No. 77], shall be used, construed, or deemed to hold Secured Lenders to be in to be control of the Debtors, or the governance, management, or operations of the Debtors for any purpose without limitation. Nor will Secured Lenders be held as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, management or operation of the Debtors' businesses (as such terms, or any similar terms, or any similar terms, are used in the Internal Revenue Code, Compensation and Liability Act, Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon Secured Lender under this Order or the Emergency Order, including, inter alia, such rights and remedies as may be exercisable by Secured Lender in connection with this Order; it is further

**ORDERED** that the Debtors shall promptly mail copies of this Order on all of the following parties: (a) to the United States Trustee for the Southern District of Texas, Houston Division; (b) counsel for Secured Lenders; (c) the parties listed on each of the Debtors' Lists of 20 largest unsecured creditors; (d) any other party which has filed a request for notices with this Court; and, (e) any official committee of creditors after the same is appointed, or committee counsel if counsel has been retained and appointed; it is further

**ORDERED** that a further hearing on Debtors' Motion to Use Cash Collateral is hereby set for May 14, 2018, at 8:30 a.M., in Courtroom 404, United States Courthouse, 515 Rusk, 4th Floor, Houston, Texas 77002.

Signed: May 07, 2018

_____
Marvin Isgur
United States Bankruptcy Judge

AGREED AS TO FORM AND SUBSTANCE:

*/s/ Melissa A. Haselden*

_____
Melissa Haselden
State Bar No. 00794778
E-mail: haselden@hooverslovacek.com
HOOVER SLOVACEK LLP
5051 Westheimer, Suite 1200
Galleria Tower II
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395

ATTORNEYS S CHASE LIMITED PARTNERSHIP,
CROSSWINDS HOUSTON LIMITED PARTNERSHIP,
A N D W POINT LIMITED PARTNERSHIP


*Sean B. Davis, with permission by /s/ Melissa A. Haselden*

_____
Sean B. Davis
WINSTEAD PC
State Bar No. 24069583
S.D. Tex. 1048341
Email: sbdavis@winstead.com
600 Travis Street
Houston, Texas 77002
(713) 650-8400 - telephone
(713) 650-2400 – facsimile

ATTORNEY FOR RSS CGCMT2014GC23-TX SCLP, LLC
and RSS WFRBS2014C24-TX CHLP, LLC

Property Name:  Crosswinds Apartments
Location:  Houston, TX
Total Apartment Units:  240
40 day budget
03/20/18 to 03/31/18
04/01/18 to 04/30/18

|  | March 20-31 -18 | April-18 |
|---|---:|---:|
| **REVENUE** | | |
| Net Rental Income | $ 8,000 | $ 72,313 |
| Total Misc Income | $ 550 | $ 4,950 |
| **TOTAL REVENUE** | $ 8,550 | $ 77,263 |
| **EXPENSE** | | |
| Total Utilities | $ 42,905 | $ 16,700 |

**EXHIBIT "A"**

| | | | | |
|---|---|---|---|---|
| Total Payroll | $ | 12,944 | $ | 15,844 |
| Total Repairs and Maintenance | $ | 8,850 | $ | 11,100 |
| TotalUnit Makeready Expense | $ | 2,500 | $ | 17,500 |
| Total Advertising and Marketing | $ | 250 | $ | 3,900 |

|  |  |  |
|---|---:|---:|
| Total General and Adminstrative | $ 1,875 | $ 6,135 |
| Management Fee Expense | $ - | $ 3,000 |
| **TOTAL OPERATING EXPENSE** | $ 69,324 | $ 74,179 |
| **NET OPERATING INCOME** | $ (60,774) | $ 3,084 |

Property Name:  Seton Chase Apartments
Location:  Houston, TX
Total Apartment Units:  232
40 day budget
03/20/18 to 03/31/18
04/01/18 to 04/30/18

|  | March 20-31 -18 | April-18 |
|---|---:|---:|
| **REVENUE** | | |
| Rental Income | $ 14,000 | $ 78,181 |
| Total Misc Income | $ 1,000 | $ 5,200 |
| **TOTAL REVENUE** | $ 15,000 | $ 83,381 |
| **EXPENSE** | | |
| Total Utilities | $ 18,741 | $ 22,200 |

| | | | | |
|---|---|---|---|---|
| Total Payroll | $ | 9,170 | $ | 14,110 |
| Total Repairs and Maintenance | $ | 1,050 | $ | 10,850 |
| Total Unit Makeready Expense | $ | 1,500 | $ | 10,000 |
| Total Advertising and Marketing | $ | 250 | $ | 3,900 |

| | | | | |
|---|---|---|---|---|
| Total General and Adminstrative | $ | 1,390 | $ | 5,535 |
| Management Fee Expense | $ | 3,750 | $ | 3,750 |
| **TOTAL OPERATING EXPENSE** | $ | **35,851** | $ | **70,345** |
| **NET OPERATING INCOME** | $ | **(20,851)** | $ | **13,036** |

Property Name:  Willowbrook Point Apartments
Location:  Houston, TX
Total Apartment Units:  151
40 day budget
03/20/18 to 03/31/18
04/01/18 to 04/30/18

|  | March 20-31 -18 | April-18 |
|---|---:|---:|
| **REVENUE** | | |
| Rental Income | $ 750 | $ 38,952 |
| Misc Income | $ - | $ 5,700 |
| **TOTAL REVENUE** | **$ 750** | **$ 44,652** |
| **EXPENSE** | | |
| Total Utilities | $ 21,283 | $ 10,000 |

| | | | | |
|---|---|---:|---|---:|
| Total Payroll | $ | 8,264 | $ | 12,886 |
| Total Repairs and Maintenance | $ | 1,450 | $ | 8,350 |
| Total Unit Makeready | $ | - | $ | 10,000 |
| Total Advertising and Marketing | $ | - | $ | 3,150 |

| | | |
|---|---:|---:|
| Total General and Adminstrative | $ 2,415 | $ 3,465 |
| Management Fee Expense | $ 3,750 | $ 3,750 |
| **TOTAL OPERATING EXPENSE** | $ 37,162 | $ 51,601 |
| **NET OPERATING INCOME** | $ (36,412) | $ (6,949) |

**Crosswinds Apartments**
**14 day Budget (May 1 - 15, 2018)**
**Cash Basis**

| | | |
|---|---|---:|
| **Revenue** | $ | 77,000 |
| | | |
| **Expense** | | |
| Utilities | | 8,350 |
| Payroll | | 7,922 |
| Repairs and Maintenance | | 5,550 |
| Unit Make Ready Expense | | 8,750 |
| Advertising and Marketing | | 1,950 |
| General and Administrative | | 3,067 |
| | | |
| **Total Expense** | | 35,589 |
| | | |
| **Net Operating Income** | $ | 41,411 |

**Seton Chase Apartments**
**14 day Budget (May 1 - 15, 2018)**
**Cash Basis**

| | | |
|---|---:|---:|
| **Revenue** | $ | 83,000 |
| | | |
| **Expense** | | |
| Utilities | | 11,100 |
| Payroll | | 7,055 |
| Repairs and Maintenance | | 5,425 |
| Unit Make Ready Expense | | 5,000 |
| Advertising and Marketing | | 1,950 |
| General and Administrative | | 2,767 |
| | | |
| **Total Expense** | | 33,297 |
| | | |
| **Net Operating Income** | $ | 49,703 |

**Willowbrook Apartments**
**14 day Budget (May 1 - 15, 2018)**
**Cash Basis**

| | | |
|---|---|---:|
| **Revenue** | $ | 44,000 |
| | | |
| **Expense** | | |
| Utilities | | 5,000 |
| Payroll | | 6,443 |
| Repairs and Maintenance | | 4,175 |
| Unit Make Ready Expense | | 5,000 |
| Advertising and Marketing | | 1,575 |
| General and Administrative | | 1,732 |
| | | |
| **Total Expense** | | 23,925 |
| | | |
| **Net Operating Income** | $ | 20,075 |